CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 0 1 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **VIRGIL CLAYTON DUNKLEY, III,** ) | |
| **Plaintiff,** ) | Civil Action No. 7:07cv00465 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| **LT. D. TATE, et al.,** ) | By: Samuel G. Wilson |
| **Defendant.** ) | United States District Judge |

Plaintiff Virgil Clayton Dunkley, III, a Virginia inmate proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Dunkley alleges that he was subjected to cruel and unusual living conditions and that his due process rights were violated when he was placed in a strip-cell on suicide watch. As relief, Dunkley requests $100,000 in damages and that the parties be "properly punished." The court finds that Dunkley's complaint fails to state a claim upon which the court may grant relief and, therefore, dismisses the suit without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

I.

Dunkley claims that on June 18, 2007, defendant Lt. D. Tate lied and said that Dunkley was going to kill himself. Dunkley claims that Qualified Mental Health Professional defendant Godsey assisted Tate with his "evil acts" and that the two "conspired" to place him on suicide watch in a strip-cell. After being placed in the strip-cell, Dunkley spoke with Godsey and told him that he never stated he would kill himself. Dunkley states that he was in the strip cell for three (3) days, from June 18, 2007 to June 20, 2007, was forced to surrender his clothing and personal property, and given only a smock and mattress. He argues that his placement in the cell was for punishment purposes, not mental health reasons, but does not state why he was allegedly being punished. He also claims that the cell was unsanitary with "hazardous health conditions" and that it was "freezing cold." However,

he does not allege any details regarding why he believes the cell was unsanitary or hazardous. Dunkley claims that he experienced physical and mental anguish as a result of being placed in the strip-cell. Finally, Dunkley alleges that his due process rights were violated because the defendants did not use a handheld camera before placing him in the strip-cell.

## II.

Although the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Therefore, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege that the living conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501 U.S. 294 (1991). In addition, a plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). While strip-cell conditions may have been inconvenient, uncomfortable, and unfortunate for the three days that he was there, Dunkley has not alleged anything to suggest that these conditions violate contemporary standards of decency. Nor has he alleged that because of the conditions, he has sustained a serious or significant injury or is at risk of a future injury. Therefore, the court finds that Dunkley has failed to state a constitutional claim under the Eighth Amendment.

## III.

To the extent Dunkley claims that his confinement in the strip-cell constitutes a violation of his due process rights afforded under the Fourteenth Amendment, it also fails. In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Further, although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Further, prisoners generally do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in a particular prison. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976). However, in Wilkinson v. Austin, 545 U.S. 209 (2005), the Court found that inmates did have a liberty interest in avoiding assignment to a state's supermax prison. In reaching this conclusion, the Court carefully distinguished the supermax facilities from normal segregation units on three grounds. First, inmates in the supermax facility were "deprived of almost any environmental or sensory stimuli and of almost all human contact." Wilkinson, 545 U.S. at 214. Second, they were assigned for "an indefinite period of time, limited only by [the] inmate's sentence." Id. Third, once assigned to supermax "[i]nmates otherwise eligible for parole lose their eligibility while incarcerated" at the

facility. Id. at 215. After noting other onerous conditions of confinement, including that the cells were lighted 24 hours per day, the court stated: "While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id. at 224. In this case, while the conditions of Dunkley's confinement in the strip-cell were more restrictive than those applied to inmates in the general population and possibly even segregation, they were not nearly so restrictive and atypical as those at issue in Wilkinson. Therefore, the court finds that Dunkley did not have a liberty interest in remaining out of the strip-cell and, thus, his due process claim fails.

## IV.

Finally, to the extent Dunkley's allegations can be construed as a claim of retaliation, it also fails. It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access the courts. See American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). However, in order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting his claim of retaliation. White v. White, 886 F.2d 271 (4th Cir. 1989). "[B]are assertions of retaliation do not establish a claim of constitutional dimension." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (federal courts should regard inmate claims of retaliation with "skepticism"). In this case, Dunkley does not point to any facts that suggest that his placement in the strip-cell was based on a retaliatory motive. Accordingly, the court finds that Dunkley's conclusory allegations of retaliation fail to state a claim on which relief may be granted under 42 U.S.C. § 1983.

## V.

Based on the foregoing, the court finds that Dunkley has not presented any claims on which

relief can be granted. Therefore, Dunkley's complaint if dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk is directed to send a certified copy of this Memorandum Opinion and accompanying Order to plaintiff.

ENTER: This 30th day of September, 2007.

United States District Judge

5

Case 7:07-cv-00465-SGW-mfu   Document 5   Filed 10/01/07   Page 5 of 5   Pageid#: 23